JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Jimmy Carter ("appellant") appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm in part, reverse in part, and remand.
 I {¶ 2} On September 24, 2007, the grand jury returned a four-count indictment against appellant. Count one charged appellant with attempted kidnapping in violation of R.C. 2923.02/2905.01(A)(2) and/or (A)(4), and also alleged a sexual motivation specification, R.C. 2941.147, a sexually violent predator specification, R.C. 2971.01, two notices of prior conviction, and two repeat violent offender specifications.
 {¶ 3} Count two charged appellant with attempted kidnapping in violation of R.C. 2923.02/2905.01(B)(1) and also alleged a sexual motivation specification, R.C. 2941.147, a sexually violent predator specification, R.C. 2971.01, two notices of prior conviction, and two repeat violent offender specifications. Count three charged appellant with possessing criminal tools in violation of R.C. 2923.24(A). Count four charged appellant with criminal child enticement in violation of R.C. 2905.05(A)(1).
 {¶ 4} Appellant entered a plea of not guilty at arraignment. He waived his right to a jury on the notices of prior conviction and two repeat violent offender specifications on counts one and two. Appellant waived an amendment to count four to include a prior conviction. A jury trial commenced. The jury found appellant guilty *Page 4 
on counts one, two, and four, and not guilty on count three. The court found appellant guilty of the sexual motivation and sexually violent predator specifications. The trial court then sentenced appellant to 18 years to life in prison. Appellant now appeals.
 {¶ 5} Rhonda Butler ("Rhonda") lives on East 141 Street in Garfield Heights Ohio, with her husband and her daughter, C.B., who is now 14 years old. Rhonda also has an older daughter who does not live with her. Rhonda works from 5:00 a.m. until 9:00 a.m. at the Warrensville Developmental Center. Rhonda's husband, Oron Smith, is employed at a factory in Garfield Heights and works from 6:00 a.m. until 2:30 p.m.
 {¶ 6} Rhonda's daughter, C.B., attends middle school and takes the bus to school daily. Beverly Maxwell is Rhonda Butler's mother who, on August 28, 2007, also resided on East 141 Street. Maxwell is handicapped because of previous strokes and can barely walk. On a typical morning, Rhonda got up for work, got dressed, set the alarm clock for her husband, set the alarm clock for C.B., and then left the house. C.B. would get herself ready for school in the morning and typically stop at her grandmother's place. The alarm clock for C.B. was set between 6:15 a.m. and 6:30 a.m.
 {¶ 7} Rhonda testified that the bus would come to pick up C.B. at the bus stop on Broadway Avenue at East 141 Street around 8:00 a.m. She attends school from 9:00 a.m. to 3:00 p.m. and also rides the bus home. On August 28, 2007, Rhonda *Page 5 
received a phone call from her mother, Beverly Maxwell, while she was at work. Rhonda then went to her mother's house, where her mother was there with Robert Smith and two policemen. Robert Smith has been a friend of Rhonda's for ten or eleven years. On August 28, 2007, Robert Smith stayed in the A building on East 141 Street. He worked for the landlord and cleaned the grounds and kept the complex clean. Rhonda arrived at her mother's house after 9:00 a.m. and did not see C.B. until later that day when she got home from school.
 {¶ 8} Rhonda testified that she knew appellant lived on Osborn Avenue on August 28, 2007. Osborn Avenue is off to the right of East 141 Street. Rhonda had seen appellant two to three times prior to August 28, 2007. Rhonda had seen appellant once at the Marathon gas station and also with a woman as they got out of the car together. Rhonda never gave permission to anyone to have C.B. get a ride to school. Rhonda testified that appellant did not have any contact with C.B. C.B. was 12 years old at the time of the incident.
 {¶ 9} Smith testified that on August 28, 2007, he was picking up the grounds around 7:30 a.m. when he saw appellant sitting on the corner by the D building on Osborn Avenue. Smith knew appellant because appellant used to date his godsister. Smith had conversations with appellant before and said that he was friends with him. Smith would also see appellant because his son is best friends with appellant's son. Appellant also has an aunt who lives on Osborn Avenue. On August 28, 2007, Smith saw appellant in a red Ford Taurus. He saw C.B. when she *Page 6 
left her house to go to her grandmother's house. Smith also knows C.B.'s grandmother. Maxwell lives in the B building. While on his way to a gas station at the corner of Broadway Avenue, Smith saw C.B. at the bottom of the hill on East 141 Street and Broadway. C.B. was upset and looked like she was ready to cry. Smith testified that he asked her what was wrong and, over objection, was permitted to testify that C.B. told him that Seany's father tried to get her in his car.
 {¶ 10} Smith took C.B. to her grandmother's house. C.B.'s grandmother ultimately made the decision to send her to school that morning. C.B.'s grandmother is handicapped and was unable to walk her to the bus stop on the day of the incident. Smith ended up walking C.B. back to the bus stop so she could go to school, and C.B. went to school that morning. Later, Smith talked to the police when they came to the grandmother's house.
 {¶ 11} The Garfield police found the red Ford Taurus and arrested appellant. During an inventory search of the Ford Taurus, the police recovered a couple of cell phones, a lock with a key, and a razor knife. The police also found a pair of white nylons and brown nylons. A search of the glove compartment yielded a pair of cheap toy-like handcuffs with a key release. A butcher knife was found in a briefcase in the trunk of the vehicle along with yellow nylon rope. An envelope with the address of Jimmy Carter at an Osborn Road address in Cleveland was also found. The police believed the vehicle may have been registered to appellant's girlfriend. None of the items were fingerprinted. *Page 7 
 {¶ 12} C.B. testified at trial that there were no other children at the bus stop with her on the day in question. She testified that a man in a red car pulled up and told her to get in the car. The man said, "Come on, I'll take you to school. Get in the car now."[1] The tone of the man's voice was normal. C.B. testified that the man kept on waving and then he backed up. C.B. testified that she shook her head no. She testified that when the man said "get in the car now" his voice was angry.[2] C.B. testified that the man eventually drove back up the hill. She testified that she had seen the man before either in the store or in the gas station. She testified that this was the second time the man did this.
 II {¶ 13} Appellant's assignments of error provide the following:
 {¶ 14} I. "Appellant's convictions must be vacated as the indictments against him were defective in that they contained structural defects as there were essential elements missing from both counts 1 and 2."
 {¶ 15} II. "The state failed to present sufficient evidence to sustain a conviction against appellant."
 {¶ 16} III. "Appellant's convictions are against the manifest weight of the evidence." *Page 8 
 {¶ 17} IV. "The trial court erred and deprived appellant of a fair trial when it allowed other acts testimony whose prejudicial effect outweighs its probative value."
 {¶ 18} V. "Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and theSixth and Fourteenth Amendments of the United States Constitution."
 {¶ 19} VI. "The trial court erred by ordering appellant to serve a sentence which is contrary to law."
 III {¶ 20} Due to the substantial interrelation between appellant's first three assignments of error, we shall address them together. Specifically, appellant argues in his first three assignments or error that his indictments were defective, the state failed to present sufficient evidence, and his convictions were against the manifest weight of the evidence.
 {¶ 21} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found *Page 9 
the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 22} In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." Thompkins, supra, at 387. As the Ohio Supreme Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 23} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable *Page 10 
doubt. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.
 {¶ 24} In the instant case, appellant was convicted of attempted kidnapping and criminal child enticement. Kidnapping, R.C. 2905.01(A), provides the following:
 "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 (1) To hold for ransom, or as a shield or hostage;
 (2) To facilitate the commission of any felony or flight thereafter;
 (3) To terrorize, or to inflict serious physical harm on the victim of another;
 (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;
 (5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority."
 {¶ 25} R.C. 2971.01(H)(1) defines a sexually violent predator as a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to *Page 11 
engage in the future of one or more sexually violent offenses. R.C. 2971.01(H)(1). Criminal child enticement, a misdemeanor under R.C. 2905.05, prohibits a person, without privilege to do so, to knowingly solicit, coax, entice, or lure any child under 14 years of age to accompany the person in any manner. R.C. 2905.05.[3]
 {¶ 26} Appellant argues that the indictment against him was defective. Specifically, appellant argues that counts one and two failed to include all essential elements of the charged offense.
 {¶ 27} In count one of the indictment appellant was charged with attempted kidnapping in violation of R.C. 2923.02 and 2905.01(A) and/or (A)(3) and/or (A)(4). In count two of the indictment appellant was charged with a second count of attempted kidnapping in violation of R.C. 2923.02 and 2905.01(B)(1). Count two is missing the knowingly component in the "shall knowingly do any of the following * * *" portion of the indictment. *Page 12 
 {¶ 28} Appellant is correct in stating that count two of the indictment is structurally defective because it failed to include the means rea requirement of "knowingly." Although count two is structurally defective, count one is not structurally defective and includes all essential elements of the offense of kidnapping and is affirmed. As we do not know what affect appellant's conviction on count two had on his overall sentencing for both counts in total, we affirm the conviction on count one, vacate the conviction on count two, and remand on count two only. Accordingly, appellant's conviction on count one is affirmed, and appellant's conviction on count two is reversed and remanded.
 {¶ 29} Accordingly, appellant's first assignment of error is overruled in part and sustained in part.
 {¶ 30} Appellant further argues that counts one and two in his indictment say nothing about the "by force, threat, or deception, * * *." Appellant argues that the indictment is, therefore, missing an essential element of R.C. 2905.01(A). However, we do not find this portion of appellant's argument to be persuasive. R.C. 2907.01(A) states that "[n]o person, by force, threat, or deception, or, in the case of a victimunder the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person" R.C. 2907.01 (emphasis added). The language "or, in the case of a victim under the age of thirteen or mentally incompetent, by any means" *Page 13 
modifies the statute; therefore "by force threat, or deception" is not an essential element.
 {¶ 31} According to R.C. 2905.01(A), "force, threat, or deception" are not essential elements when the alleged victim is under the age of thirteen. Here, count one charged that the "[defendant * * * did unlawfully, did attempt by any means to remove Jane Doe, a victim underthe age of thirteen, to wit: date of birth * * *, from the place where she was found or restrained her of her liberty for the purpose offacilitating the commission of a felony or the flight thereafter and/orterrorizing or inflicting serious physical harm on Jane Doe and/orengaging in sexual activity, as defined in Section 2907.01 of the Revised Code, with Jane Doe against her will." (Emphasis added.) Accordingly, count one of the indictment was not defective.
 {¶ 32} Appellant's conviction and sentence on count one are affirmed, and appellant's conviction on count two is reversed and remanded.
 {¶ 33} As previously stated, appellant argues in his second and third assignments of error that his convictions were based on insufficient evidence and were against the manifest weight of the evidence. However, aside from the defect in appellant's indictment in count two previously mentioned, we find appellant's remaining convictions to be proper.
 {¶ 34} In the case at bar, the police found yellow nylon rope and a butcher knife in a briefcase in the trunk of the vehicle appellant was driving. The police also found a pair of white nylons, a pair of brown nylons, and a pair of cheap handcuffs in *Page 14 
the glove compartment. In addition, the police recovered a couple of cell phones, a lock with a key, and a razor knife.
 {¶ 35} C.B., a 12-year-old girl, was standing at her school bus stop when appellant threatened her, demanding that she get into his car. C.B. was shown some pictures on August 28, 2007 by the detective and she identified a photo of appellant. She stated that she did not know appellant's name, but identified him in the courtroom. She testified that this was the second time appellant had approached her. Moreover, significant additional testimony was provided, and a complete jury trial was conducted.
 {¶ 36} When the evidence is viewed in a light most favorable to the state, a reasonable juror could have found that all the essential elements of appellant's remaining convictions were proven beyond a reasonable doubt. In addition, nothing in the record demonstrates that the jury lost its way in convicting appellant. Accordingly, appellant's second and third assignments of error are overruled.
 {¶ 37} Therefore, appellant's first assignment of error is sustained for resentencing on count two only, and appellant's second and third assignments of error are overruled.
 IV {¶ 38} Appellant argues in his fourth assignment of error that the lower court erred in allowing other acts testimony whose prejudicial effect outweighs its *Page 15 
probative value. Specifically, appellant argues that the lower court erred by admitting evidence relating to a prior uncharged act.
 {¶ 39} Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 40} However, proof of identity is one of the enumerated purposes with Evid. R. 404(B) for which other acts evidence is admissible "where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime." State v. Wilkinson (1980), 64 Ohio St.2d 308, 317. In addition, the Ohio Supreme Court has held that where the other acts "form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment," or are "inextricable related to the alleged criminal act," they may be presented to prove identity. State v. Lowe (1994), 69 Ohio St.3d 527.
 {¶ 41} Here, the state offered the evidence as proof of identity and as part of the immediate background of the charged. Absent that evidence, the jury would have been confused as to why the police even stopped appellant and why he was arrested. The offered evidence was part of the "immediate background" of the charged offense; that evidence was inextricably intertwined with the evidence *Page 16 
demonstrating appellant's possession of nylons, handcuffs, knife, rope, and envelope. The evidence was necessary to explain the sequence of events to the jury so that the jury could understand appellant's possession of these items.
 {¶ 42} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 43} Appellant argues in his fifth assignment of error that he was denied effective assistance of counsel. In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, the dual prongs of the test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, must be satisfied. A defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel," as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive him of a fair and reliable trial. Id. at 687.
 {¶ 44} The Ohio Supreme Court set forth a similar two-part test:
 "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Bradley (1989), 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373.
 {¶ 45} Because there are countless ways to provide effective assistance in any given case, the scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, supra; accord State v. Bradley, *Page 17 
supra. In sum, it must be proven that counsel's performance fell below an objective standard of reasonable representation, and that prejudice arose from his performance. Id.
 {¶ 46} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164. "Judicial scrutiny of counsel's performance must be highly deferential * * *," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Strickland, supra, at 689.
 {¶ 47} In the case at bar, appellant's decision not to waive count four was trial strategy. Appellant and his counsel had time to discuss and confer and elected not to waive it to the bench. Similarly, appellant's failure to object to the state's cross-examination of a defense witness was also trial strategy. The state impeached the witness's credibility on cross-examination through the use of her prior inconsistent statements as well as appellant's conversations with her.
 {¶ 48} Appellant failed to show that the result of the trial would have been different had his trial counsel objected. We find nothing in the record to demonstrate ineffective assistance of counsel on the part of appellant's trial counsel. The conduct in this case did not constitute a substantial violation of any of defense counsel's *Page 18 
essential duties to the client. Furthermore, we find that the record demonstrates that appellant was not prejudiced by counsel.
 {¶ 49} Appellant's fifth assignment of error is overruled.
 {¶ 50} Appellant argues in his sixth assignment of error that the lower court erred in ordering him to serve a sentence which is contrary to law. Appellant was sentenced for attempted kidnapping, which is a second degree felony. The sentencing range for a second degree felony is two to eight in yearly increments. Appellant was sentenced to eight years, coupled with a repeat violent offender specification of ten years, for a total of 18 years to life. The sentence was within the required parameters of the law.
 {¶ 51} In addition, the lower court made several findings on the record which constitute factors indicating that appellant's conduct was more serious than conduct that normally constitutes the offense.
 {¶ 52} R.C. 2929.12(A) grants a sentencing judge discretion to determine the most effective way to comply with the purposes and principles of sentencing. In exercising that discretion, the court shall consider, along with any other "relevant" factors, the seriousness factors set forth in R.C. 2929.12(B) and (C) and the recidivism factors in R.C. 2929.12(D) and (E). These statutory sections provide a nonexclusive list for the court to consider. It is important to note that there is no mandate for judicial fact-finding in these general guidance statutes. A sentencing *Page 19 
court is required merely to "consider" the statutory factors. State v.Tish, Cuyahoga App. No. 88247, 2007-Ohio-1836.
 {¶ 53} In the case at bar, the trial court emphasized the victim's young age and the psychological harm sustained by the victim due to appellant's actions. R.C. 2929.12(B)(1) and (B)(2). Additionally, the court noted the appellant's lack of remorse in this case, which is a factor specified within R.C. 2929.12(D)(5) as a factor indicating that the offender is likely to commit future crimes. Although appellant did finally express some remorse, much later at the sentencing hearing, this may have been directed more at the sentencing and less at the crime itself. It is within the trial court's discretion to reject an offender's display of remorse if the court finds it to be disingenuous. Accordingly, the trial court properly found that appellant's display of remorse was not genuine and, therefore, did not consider appellant's statements in a light favorable to appellant.
 {¶ 54} Based upon our review of the evidence and the record, including the transcripts of the trial and sentencing, this court finds the lower court's actions to be proper.
 {¶ 55} Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 56} Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion. It is ordered that appellant and appellee share the costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 20 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., CONCURS; MELODY J. STEWART, J., DISSENTS WITH SEPARATE OPINION
[1] Tr. 410.
[2] Tr. 412.
[3] R.C. 2905.05. Criminal child enticement. "(A) No person, by any means and without privilege to do so, shall knowingly solicit, coax, entice, or lure any child under fourteen years of age to accompany the person in any manner, including entering into any vehicle or onto any vessel, whether or not the offender knows the age of the child, if both of the following apply:
(1) The actor does not have the express or implied permission of the parent, guardian, or other legal custodian of the child in undertaking the activity.
(2) The actor is not a law enforcement officer, medic, firefighter, or other person who regularly provides emergency services, and is not an employee or agent of, or a volunteer acting under the direction of, any board of education, or the actor is any of such persons, but, at the time the actor undertakes the activity, the actor is not acting within the scope of the actor's lawful duties in that capacity. * * *"